IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KATHY WILLIS, )
 )
      Plaintiff, )
 )
v. ) Civil No. 10-207-CJP
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
      Defendant. )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Kathy Willis is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1]

## Procedural History

Ms. Willis filed prior applications for benefits. The most recent prior application was denied on September 6, 2005, and was not appealed. (Tr. 9, 18). Therefore, the period at issue begins on September 6, 2005.

The present application was denied initially and on reconsideration. After holding a hearing, ALJ Gail Reich denied the application for benefits in a decision dated January 26, 2009. (Tr. 9-16). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 17.

1

been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff argues that the ALJ erred in the following respects:

1.   Her RFC assessment was legally flawed .

2.   She erred in finding that plaintiff's COPD was not a severe impairment.

3.   She erred in weighing the opinions of plainitff's treating doctor, Dr. Cordts.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Willis is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard v. Perales*, **402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Reich followed the five-step analytical framework described above. She determined that Ms. Willis had not been engaged in substantial gainful activity since the alleged onset date, and that she has severe impairments of lumbar degenerative disc disease, abdominal pain, major depression, anxiety and posttraumatic stress disorder. She determined that these impairments do not meet or equal a listed impairment. The ALJ found that Ms. Willis has the residual functional capacity to perform work at the light exertional level with some limitations. Based on the testimony of a vocational expert, she found that Ms. Willis is able to do jobs which exist in significant numbers in the regional and national economy, which leads to the conclusion that she is not disabled.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

An undated Disability Report, apparently completed by plaintiff, states that she stopped working on March 15, 2003, due to "back problems." She identified "illiterate, bad back and depression" as the conditions which limit her ability to work. (Tr. 175).

In an Activities of Daily Living Questionnaire dated April 10, 2006, plaintiff indicated that she hears voices and "sees demons that are not there." She stated that she feels like someone is watching her and trying to get in the doors at night. (Tr. 199-200).

2. **Plaintiff's Testimony**

Plaintiff was represented by an attorney at the evidentiary hearing on November 13,

2008. (Tr. 93).

After conferring with plaintiff, her attorney told the ALJ that she wanted to amend the onset date to January 1, 2006, as alcohol abuse prior to that date had contributed to her condition. (Tr. 95-96).

Plaintiff was born in 1960 and was 48 years old at the time of the hearing. (Tr. 95). She had a fifth grade education. She last worked about 4 years prior to the hearing, in an iron factory. (Tr. 96). She operated a machine, which gave off a lot of heat, and her breathing got so bad that she had to quit. She also has back pain and stomach pain. The stomach pain was from being shot about 5 years earlier. (Tr. 97).

Plaintiff lives with her adult daughter, who supports her. Ms. Willis testified that she stays in bed most of the day and does not do much of anything. (Tr. 98).

Ms. Willis has COPD. She had cut down on her smoking about 6 months previously, but was still smoking a pack of cigarettes every 3 or 4 days. She quit drinking "quite a while ago." (Tr. 99).

Ms. Willis testified that she has low back pain, which is helped by medication. A doctor in Cape Girardeau wanted to operate on her, but she did not have insurance. (Tr. 100). Dr. Cordts wanted to give her shots, but she has no way to pay for the treatment. (Tr. 101).

She has also had abdominal pain. She had a hysterectomy in November, 2005, which made it worse. (Tr. 101). Her most recent surgery was for a hernia which resulted from surgery to remove scar tissue from a gunshot wound. She continues to have constant abdominal pain and diarrhea. (Tr. 102).

Dr. Cordts has prescribed medication for depression and anxiety. She has anxiety attacks. (Tr. 103-104).

Plaintiff testified that she can sit for 15 minutes and can stand for 15 to 20 minutes. (Tr. 106).

**3.      Vocational Expert's Testimony**

VE Gregory Jones testified that plaintiff's past work as a machine operator was classified as medium, but it was closer to heavy as she performed it. (Tr. 107).

The ALJ asked the VE to assume a person who could do work at the medium exertional level, limited to semiskilled, with no exposure to concentrated environmental irritants or extreme temperature and only brief contact with co-workers. The VE testified that such a person could not do plaintiff's past work. At the medium level, she could do the jobs of bus person and machine packager, both of which exist in significant numbers in the economy. At the light level, she could do the jobs of housekeeping/cleaner, cafeteria attendant and office helper, all of which exist in significant numbers in the national economy. (Tr. 108-110).

**4.      Medical Records Prior to September 6, 2005**

Ms. Willis' prior application for benefits was denied on September 6, 2005. (Tr. 18). She did not appeal that decision. In her decision on the present application, the ALJ found that there was no basis on which to reopen the prior denial. (Tr. 9). Therefore, the decision on the prior application is final and means that Ms. Willis was determined to be not disabled as of September 6, 2005. See, ***Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)**. However, medical evidence relating to the prior application may be considered insofar as it is relevant to the issues presented in this case. ***Groves v. Apfel*, 148 Fl3d 809, 810-811 (7th Cir. 1998)**.

Plaintiff was admitted to St. Mary's Good Samaritan Hospital in Centralia, Illinois, in 2002 for alcohol dependancy. She was depressed and had suicidal thoughts. She completed a detoxification program without complications. (Tr. 299-301). An x-ray of the lumbosacral

6

spine taken at that time was normal. (Tr. 312).

In July, 2003, plaintiff was involved in an automobile accident. She went to the emergency room the next day, complaining of neck and back pain. (Tr. 506). She had neck tenderness. She had normal range of motion of the lumbar spine. (Tr. 507, 510). On August 1, 2003, x-rays of the lumbar spine were normal. X-rays of the neck showed moderate degenerative disc disease at C7-T1. (Tr. 500).

Plaintiff was treated thereafter with physical therapy. She improved, and was released to return to work on November 4, 2003. (Tr. 491).

In connection with her prior applications, plaintiff underwent pulmonary function studies in April and May, 2005. These studies measured 2 values: forced vital capacity (FVC) and forced expiratory volume in 1 second (FEV-1). The April tests showed FVC capacities ranging from 103% to 107% of the predicted range. Her FEC-1 results ranged from 73.7% to 76.5% of the predicted volume. (Tr. 456-457). In May, 2005, her FVC capacities ranged from 117% to 121% of the predicted range. Her FEC-1 results ranged from 94.7% to 95.8% of the predicted volume. (Tr. 422-425).

Plaintiff was seen by Dr. Scott Cordts on July 8, 2005, for complaints of back pain. She complained of non-radiating pain in her low back. She also gave a history of asthma which was well-controlled on Advair. She denied any increase in pain, even though she had been out of her medications (Vicodin and Flexeril). On examination, she had no back tenderness. Straight leg raising was negative and muscle strength was full. (Tr. 416).

### 5. Medical Records after September 6, 2005

Plaintiff's main treating doctor has been Dr. Scott Cordts, who specializes in family

practice.³ He has treated her for a variety of ailments, including back pain and depression.

On September 14, 2005, Dr. Cordts noted that she had an apparent ovarian mass, for which she was being seen by Dr. Skelly. She did not have health insurance and was trying to get a medical card. She had anxiety and some depressive symptoms, but denied suicidal ideation. He started her on Lexapro and Klonopin for anxiety. (Tr. 245).

In November, 2005, Dr. Stephanie Skelly performed a hysterectomy, removal of an ovarian mass and lysis of adhesions from prior surgery after a gunshot wound to the abdomen. (Tr. 223, 242). The mass was benign. (Tr. 233). A pre-operative chest x-ray was negative. She had no infiltrates, consolidates or pleural effusions. (Tr. 234).

Dr. Cordts saw Ms. Willis on January 13, 2006, and she reported that her moods were "much improved" since learning the mass was benign. She had been getting her Vicodin, Celexa and Klonopin from Dr. Skelly. She felt her back pain had gotten worse since the surgery. Dr. Cordts did not note any abnormal physical findings with regard to her back. He refilled her prescriptions, including Flexeril and Vicodin. (Tr. 243).

On April 18, 2006, plaintiff told Dr. Cordts that her low back pain was worse and was radiating into her hips. She also complained of depression. She said she had an appointment with a psychiatrist to be evaluated for disability. The examination of her back was normal. She had no tenderness, straight leg raising was negative, deep tendon reflexes were normal, and muscle strength was full. (Tr. 276).

In July, 2006, Dr. Cordts noted that she was taking Vicodin 4 times a day for chronic low pain from degenerative disc disease. The Vicodin controlled her pain. She again had a normal

---

³The ALJ and defendant incorrectly spell this doctor's name as "Cordis."

back examination. He told her to continue taking her medications. (Tr. 274).

In November, 2006, Dr. Cordts noted that Ms. Willis had been recently in the hospital for gastritis. She had tested positive for h. pylori. She was being treated with PPI medication (generic of Prilosec) and antibiotics. (Tr. 280-281). She had stopped taking Celexa a few months prior as it was not helping her. She was still taking Klonopin. Her low back pain was "well controlled with her current medical regimen." (Tr. 533). On May 18, 2007, plaintiff told Dr. Cordts that her back pain was controlled on Vicodin and that her pain was "allowing her to be active." The examination of her back was normal. She did complain that her "nerves have gotten worse" as her kids had moved in with her and she was "having a hard time dealing with it." Dr. Cordts continued her medications and added BuSpar for anxiety. (Tr. 532). In September, 2007, Ms. Willis told Dr. Cordts that she had not been able to get her inhalers through "patient assistance," and she was having moderate shortness of breath on exertion. Her back exam was again normal. He gave her samples of Advair. (Tr. 530).

Plaintiff had surgery for a small bowel obstruction in September, 2007. (Tr. 634-636).

Plaintiff returned to Dr. Cordts on October 30, 2007. She complained of muscle spasm in her low back. She was taking Vicodin which gave her "greater functional ability." She had "tweaked" her side the previous day while vacuuming. She reported that the inhaler (Advair) which he had given her had helped her "quite a bit" with her breathing, and she needed more. He detected muscle spasm in her left lower back, but her back exam was otherwise normal. He noted that she was still smoking. (Tr. 529).

On January 30, 2008, she returned to Dr. Cordts complaining of abdominal pain with a bulge in the incision from her bowel obstruction surgery. She also complained of increasing back pain. She had a cough and increasing shortness of breath. Dr. Cordts detected tenderness

9

in the low back to palpation. Her advised her to continue her medications and to increase Elavil at night. He recommended an abdominal CT. He prescribed additional medication for her COPD, noting that he encouraged her to quit smoking and get a flu shot, but she was "not interested." (Tr. 526). On April 10, 2008, he noted that her COPD was stable and she had been cleared for hernia repair. She was continuing to smoke. (Tr. 525).

Plaintiff's hernia was repaired by Dr. Allen Liefer at Memorial Hospital in Chester, Illinois, in May, 2008. (Tr. 333-335). A chest x-ray showed mild pulmonary hyperinflation consistent with acute or chronic obstructive airway disease, with no active pulmonary infiltrate. (Tr. 350). After she was discharged, she had increasing pain due to a severe cough. She was admitted again with bronchitis. It was noted that she smoked 1 ½ to 2 packs of cigarettes a day. She was treated with medication and released the next day. (Tr. 380).

Ms. Willis was examined by a family nurse practitioner in Dr. Cordts' office on July 7, 2008. She was complaining of nausea and vomiting, along with abdominal pain. On examination, normal findings were noted as to her respiratory function and her mental status. No findings were recorded as to her back or neck. She was encouraged to follow up with Dr. Liefer. (Tr. 522).

On September 25, 2008, Ms. Willis presented to the emergency room at Sparta Community Hospital with complaints of chest pain. She experienced chest pain while "resting an hour after walking to town and back." (Tr. 580). Her cardiac work-up was normal in that she had a normal EKG and normal cardiac enzymes. A chest x-ray showed no cardiopulmonary disease. She was observed overnight, and had no further episodes of chest pain. Stress testing was not available at Sparta, and she did not want to go to another facility due to financial concerns. She signed out against medical advice. (Tr. 580 -581). On October 2, 2008, a stress

test was done with normal results. (Tr. 564).

**6.      Psychological Examination**

Gregory Rudolph, Ph.D., performed a consultative psychological examination on May 16, 2006. (Tr. 247-250). He noted that a prior report indicated that IQ testing showed that Ms. Willis was in the borderline range of mental ability. (Plaintiff had been examined in connection with a prior application.) She gave a history of posttraumatic stress/rape at age 12 and spousal abuse. She was divorced. She said she was receiving treatment for depression at the Human Service Center in Sparta, Illinois.[4] Ms. Willis told Dr. Rudolph that she heard voices at her home and that she experienced generalized anxiety with anxiety attacks.

On examination, plaintiff was oriented to reality. She had no unusual thought disturbances such as delusions or hallucinations. Her memory for recent and distant recall were intact. She had a good knowledge of general information. She was able to do simple arithmetical calculations. Her judgment and reasoning skills were adequate.

**7.      Physical Examination**

Adrian Feinerman, M.D., performed a consultative physical examination on May 22, 2006. (Tr. 251-255). Ms. Willis complained of "back pain and no education." She also said that she had COPD. She said that she had a motor vehicle accident 10-15 years earlier, and had been told that she had a problem with discs in her low back and neck. She said that she had been told that she needed back surgery, but she had no insurance. She said that she could walk 1 block, stand 20 minutes and sit 20 minutes.

---

[4]There are no records of any treatment from the Human Service Center in Sparta, Illinois. The records from plaintiff's 2002 hospitalization for alcohol dependency indicate that she was referred to the "Sparta Human Services Center." See, Tr. 485. There is no indication that plaintiff was ever treated there.

11

On physical examination, Ms. Willis was 5 feet, 6 inches tall and weighed 125 pounds. Her lungs were clear to auscultation and percussion, with no wheezes, rales or rhonchi. She had no limitation of motion of any joint. Grip strength was strong and equal bilaterally. There was no anatomic deformity of the cervical, thoracic or lumbar spine. She had no limitation of movement of any part of her spine. She was able to walk more than 50 feet and to get on and off the examination table without assistance. She could tandem walk, walk on heels and toes, squat and rise from a chair with no difficulty. Muscle strength was normal throughout, with no spasm or atrophy. Fine and gross manipulation were intact. Straight leg raising was negative. Her behavior, memory, concentration and ability to relate were all normal.

**8.    Psychiatric Review Technique**

A Psychiatric Review Technique form was completed by Howard Tin, PsyD., on June 12, 2006. (Tr. 260-273). Dr. Tin noted that plaintiff had major depressive disorder with suicidal ideation as well as PTSD and anxiety disorder. He found that plaintiff had only mild limitations in maintaining concentration, persistence or pace, and moderate limitations in activities of daily living and social functioning. She had no episodes of decompensation.

**9.    Physician's Report form completed by Dr. Cordts**

The Illinois Department of Human Services asked Dr. Cordts to complete a Physician's Report form. This form was to be used "to determine eligibility for assistance or employability status." Dr. Cordts completed the form on October 13, 2008, and stated that he saw her that day. (Tr. 678-682).

Dr. Cordts indicated diagnoses of depression with anxiety, chronic low back pain and tobacco abuse, with history of alcoholism, gunshot wound, GERD, total abdominal hysterectomy and small bowel obstruction surgery with subsequent hernia necessitating repair. (Tr. 678).

The first part of the form is a review of systems. With regard to the respiratory system, he noted that she had wheezing and prolonged expiration. The only pulmonary function study cited was one that was done on September 1, 2005, in connection with plaintiff's prior application for disability benefits. Dr. Cordts stated that she had improvement in her symptoms with treatment. With regard to the musculoskeletal system, he wrote that she had pain in her low back. The form asked for x-ray findings. Dr. Cordts cited only the films from August 1, 2003, which showed degenerative changes at C7-T1 and a "normal" lumbosacral spine. (Tr. 679).

The form then asked the doctor to assess the patient's capacity for physical activity. The form uses a scale in which A is full capacity, B is up to 20% reduced capacity, C is 20 to 50% reduced capacity, D is more than 50% reduced capacity, and E is insufficient information to determine. Dr. Cordts assessed plaintiff's ability to walk, stand, sit, push, pull and perform activities of daily living at C. He assessed her ability to bend, stoop and turn at D. Her assessed her gross manipulation and finger dexterity at A. He said that she could lift no more than 10 pounds at a time. (Tr. 682).

With regard to mental impairments, Dr. Cordts noted that she had a history of alcohol abuse. He wrote that she complained of hallucinations, but that this was a new complaint made for the first time on October 13, 2008. He stated that she was treated with Elavil and Klonopin. He assessed moderate limitation in activities of daily living, social functioning, and concentration, persistence and pace. He noted no episodes of decompensation. (Tr. 682).

## Analysis

Plaintiff's first point is that the ALJ's assessment of her RFC was legally insufficient because it was expressed in terms of the ability to do work at the light exertional level and did not determine her RFC on a function-by-function basis.

As support for her argument, plaintiff cites to SSR 96-8, which says that the RFC assessment is a function-by-function assessment. She hones in on this sentence from SSR 96-8:

> At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.

As plaintiff notes, Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators." **Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999)**. Social Security Rulings are "binding on all components of the Social Security Administration." **20 C.F.R. § 402.35(b)(1)**. They do not, however, "have the force of law or properly promulgated notice and comment regulations." **Lauer, id.**

The Seventh Circuit has rejected plaintiff's argument. "Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient [citations omitted]." **Knox v. Astrue, 327 Fed. Appx. 652, 657 (7th Cir. 2009). See also, Zatz v. Astrue, 346 Fed. Appx. 107, 111-112 (7th Cir. 2009).**

Here, ALJ Reich provided a lengthy narrative discussion of Ms. Willis' symptoms, her testimony, the medical records, the evaluation form completed by Dr. Cordts, and the consultative examinations. (Tr. 11-14). She weighed this evidence and explained her assessment of it before concluding that plaintiff has the RFC to do light work with no exposure to concentrated environmental irritants or extreme temperature, and limited to the performance of simple tasks and only brief contact with the public or co-workers.

It is telling that plaintiff complains that the ALJ did not assess her limitations with regard to walking, standing, sitting, etc., but she points to no evidence in the record that she claims was

14

overlooked or ignored by the ALJ. She simply argues for a mechanical rule requiring the ALJ to set forth a function-by-function assessment. However, such a rule would elevate form over substance, and it is not the law under clear Seventh Circuit precedent.

Plaintiff's second point is that the ALJ erred in finding at the second step that her COPD was not a severe impairment because the ALJ improperly found that Ms. Willis failed to follow prescribed treatment without an acceptable reason. The ALJ did not elaborate on what treatment she meant. Plaintiff points out that, while she did sometimes fail to take her medication, it was because she could not always afford it. The ALJ did not say that she was referring to failure to take medication. The record establishes that plaintiff did not quit smoking, although she had been urged to do so by Dr. Cordts. It is possible that the ALJ was referring to the failure to quit smoking, but it is impossible to know. However, this gap is not fatal since the remark about failure to follow treatment was only a secondary consideration. The ALJ's primary reason for finding that COPD was not a severe impairment was that "treatment records throughout show the claimant's COPD to be under control with her prescribed inhalers and medication." (Tr. 10).

An impairment is severe if it significantly limits the ability to do "basic work activities." 20 C.F.R. §404.1521(a). As the medical records establish that plaintiff's COPD was controlled with treatment, it was not unreasonable for the ALJ to conclude that her COPD was not severe.

Further, the determination of whether a particular impairment is severe or not is of no consequence to the outcome of the case where, as here, the ALJ recognized other severe impairments and so proceeded with the full evaluation process. **Castile v. Astrue, 671 F.3d 923, 927 (7th Cir. 2010)**. The failure to label her COPD as severe did not prejudice plaintiff because the ALJ accounted for her complaints of breathing difficulties in her RFC assessment by precluding her from concentrated exposure to environmental irritants and extreme temperatures.

15

(Tr. 13). Plaintiff does not argue that her COPD causes other limitations that should have been included in the RFC assessment.

Lastly, Ms. Willis takes issue with the ALJ's weighing of the opinions of Dr. Cordts. She argues that his opinions, expressed on the form he filled out on October 13, 2008, should have been given more weight because he was her treating doctor.

A treating physician's opinion is, of course, not automatically entitled to controlling weight. Such an opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

With regard to the assessment of treating source opinions, **20 C.F.R. §404.1527(d)(2)** states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u>

[emphasis added]

ALJ Reich rejected Dr. Cordts' opinion that plaintiff had very limited physical abilities because these limitations were unsupported by his own treatment records. (Tr. 12-14). As the ALJ noted in her extensive review of his treatment notes, Dr. Cordts generally recorded normal findings upon examination of plaintiff's back and repeatedly noted that her low back pain was controlled by medication. Further, the ALJ noted a lack of diagnostic findings. Indeed, Dr. Cordts' report cites only one set of lumbar x-rays, from 2003, and they were normal. In this

regard, plaintiff's argument that she had "x-ray findings of degenerative disc disease" (Doc. 20, p. 20) is disingenuous. Plaintiff claims she has *low* back pain, however, the only x-ray findings of degenerative disc disease were in the upper back at C7-T1. See, Tr. 500.

In short, since Dr. Cordts' opinions with regard to plaintiff 's physical impairments were not supported by clinical and diagnostic techniques, and were inconsistent with Dr. Feinerman's physical examination, the ALJ did not err in discounting them.

Plaintiff also argues that the ALJ was wrong to discount Dr. Cordts' opinions as to her mental impairments on the basis that Dr. Cordts is a family practice physician and therefore not qualified to evaluate or treat mental disorders. Plaintiff is incorrect. 20 C.F.R. §1527(d)(5) directs the ALJ to consider the doctor's specialization in weighing medical opinions. The Seventh Circuit has held that it was not error for an ALJ to reject the opinion of a non-specialist as to mental issues, particularly where the opinion was not based on any objective testing. **Fox v. Heckler, 776 F.2d 738, 734-744 (7th Cir. 1985)**. Plaintiff's argument ignores the fact that the ALJ discounted Dr. Cordts' assessment of mental functional limitations not only because he is not a specialist in the area, but because "his own findings fail to support the marked limitations he imposed." (Tr. 12).

In addition, to the extent that plaintiff argues that the ALJ was bound to accept her treating physician's opinion as to her RFC, she is mistaken. SSR96-8p instructs that the "RFC assessment must be based on *all* of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, etc. SSR96-8p, at *5 (emphasis in original). Opinions of treating doctors regarding RFC are *not* given any special weight because the issue of RFC is an issue that is reserved to the Commissioner. See, 20 C.F.R. §404.1527(e)(1)&(2). SSR 96-59

17

explains:

> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

SSR 96-5p, at *2.

Plaintiff also points out that the ALJ was critical of the format of the form which Dr. Cordts filled out, but the form was sent to him by a state agency. The ALJ stated, not unreasonably, that the rating system used by the form was vague because the rating levels were so wide. For example, a rating of C meant 20 to 50% reduced capacity. While it is true that a state agency sent the form to Dr. Cordts, the stated purpose of the form was to "determine eligibility for assistance or employability status." (Tr. 678). This was not a Social Security Agency form. The fact that the form was sent by a state agency did not preclude the ALJ from criticizing its format. In any event, the ALJ rejected Dr. Cordts' opinions not because of the format in which they were expressed, but because they were unsupported by clinical or laboratory findings and were inconsistent with other evidence in the record.

Having fully considered plaintiff's arguments, this Court is convinced that the ALJ's decision was supported by substantial evidence in the record as a whole and that no errors of law were made.

## Conclusion

The final decision of the Commissioner of Social Security finding that Kathy Willis is not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income is **AFFIRMED.**

**The Clerk of Court is directed to enter judgment in favor of defendant.**

**IT IS SO ORDERED.**

**DATED: July 1, 2011.**

                                  **s/ Clifford J. Proud**
                                  **CLIFFORD J. PROUD**
                                  **United States Magistrate Judge**